[Cite as *In re H.D.*, 2014-Ohio-228.]

## IN THE COURT OF APPEALS OF OHIO

## TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| H.D. | : | No. 13AP-707 |
| | | (C.P.C. No. 11JU-08-11263) |
| (H.D., Jr., | : | |
| | | (REGULAR CALENDAR) |
| Appellant). | : | |

---

### D E C I S I O N

#### Rendered on January 23, 2014

---

*William T. Cramer*, for appellant.

*Robert J. McClaren*, for appellee Franklin County Children Services.

---

**APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch**

SADLER, P.J.

{¶ 1} Appellant, H.D., Jr. ("father"), appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which terminated his parental rights and granted appellee's, Franklin County Children Services ("FCCS"), motion for permanent custody of H.D. for purposes of adoption. For the following reasons, we affirm.

## I. BACKGROUND

{¶ 2} On August 24, 2011, FCCS filed a complaint seeking custody of the minor child, H.D., who was born on July 3, 2011, alleging neglect and dependency because "[a]t the time of delivery, both Mother and [H.D.] tested positive for methadone." (Aug. 24, 2011 Complaint, 1.) An Emergency Care Order was issued on August 25, 2011, granting

FCCS temporary custody of H.D. and ordering visits with mother and father to be supervised.

{¶ 3} Effective September 29, 2011, the trial court found H.D. to be a dependent minor, pursuant to R.C. 2151.04(C), granted FCCS temporary court commitment, pursuant to R.C. 2151.353(A)(2), and approved and adopted the case plans for mother and father that were previously filed with the court. Pursuant to the case plan, father was required to provide for H.D.'s basic needs, maintain stable housing, maintain employment and provide proof thereof, provide clean urine screens, complete drug and alcohol counseling, and complete domestic violence counseling.[1] On July 13, 2012, FCCS filed a motion for permanent custody due to both parents' failure to advance the objectives of their case plan; however, on August 21, 2012, FCCS requested and was granted an extension of temporary court commitment to allow the parents additional time to complete their case plan objectives.

{¶ 4} On December 3, 2012, FCCS filed anew their motion for permanent custody. According to FCCS, "[p]utative Father * * * has failed to make any significant progress in his case plan objectives towards reunification with this child." (Dec. 3, 2012 FCCS' Motion for Permanent Custody, 4.) A hearing on FCCS' motion for permanent custody was tried before a magistrate on March 25 and April 8 and 9, 2013. Therein, FCCS presented witnesses including Amy Dunfee, father's substance abuse counselor, Monica Kagey, Franklin County Family Drug Court Manager, father, Solena Helm, FCCS caseworker, and Charles Christopher Alley, the Guardian ad Litem ("GAL"). The GAL recommended the trial court "grant the P.C.C. motion to move forward with placement." (Apr. 9, 2013 Tr., 10.) Father also testified in support of his own case-in-chief.

{¶ 5} In an amended decision filed June 11, 2013, the magistrate granted permanent custody to FCCS. Father filed objections to the magistrate's decision asserting the magistrate's decision was against the manifest weight of the evidence, and FCCS filed a memorandum contra. In denying father's objection, the trial court approved and adopted the magistrate's decision finding "that the magistrate properly granted [permanent custody] of [H.D.] to FCCS for purposes of adoption. The parental rights of

---

[1] Because the mother is not a party to this appeal, we focus our analysis around facts germane to the father.

Mother * * * and Father * * * are hereby terminated."  (Aug. 9, 2013 Decision and Judgment Entry, 12.)  This appeal followed.

## II.  ASSIGNMENT OF ERROR

{¶ 6}   Father brings a sole assignment of error for our review:

> The juvenile court's conclusion that termination of parental rights was in the best interest of the child was not supported by clear and convincing evidence.

## III.  STANDARD OF REVIEW

{¶ 7}   "In reviewing a judgment granting permanent custody to FCCS, an appellate court 'must make every reasonable presumption in favor of the judgment and the trial court's findings of facts.' "  *In re J.T.*, 10th Dist. No. 11AP-1056, 2012-Ohio-2818, ¶ 8, quoting *In re P.G.*, 10th Dist. No. 11AP-574, 2012-Ohio-469, ¶ 37.   " '[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the [juvenile] court's verdict and judgment.' "  *In re Brooks*, 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 59, quoting *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988).

{¶ 8}   "Judgments are not against the manifest weight of the evidence when all material elements are supported by competent, credible evidence."  *J.T.* at ¶ 8.  "Pursuant to R.C. 2151.414(B)(1), a trial court may grant permanent custody if after a hearing it determines, by clear and convincing evidence, that * * * such relief is in the best interest of the child."  *Id.* at ¶ 9.   "Clear and convincing evidence is that degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the facts to be established."  *In re K.L.*, 10th Dist. No. 13AP-218, 2013-Ohio-3499, ¶ 14.   "It is more than a mere preponderance of the evidence but does not require proof beyond a reasonable doubt." *Id.*

## IV.  DISCUSSION

{¶ 9}   In his sole assignment of error, father argues the trial court's decision determining it was in the best interest of H.D. to award permanent custody to FCCS and terminate his parental rights was not supported by clear and convincing evidence. Specifically, father asserts the trial court erred in finding FCCS met its burden, pursuant

to R.C. 2151.414(B)(1)(a), "that [H.D.] could not be placed with his parents within a reasonable time." (Appellant's Brief, 22.)

{¶ 10} Parents have a constitutionally-protected fundamental interest in the care, custody, and management of their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000). The Supreme Court of Ohio has recognized the essential and basic rights of a parent to raise his or her child. *In re Murray*, 52 Ohio St.3d 155, 157 (1990). These rights, however, are not absolute, and a parent's natural rights are always subject to the ultimate welfare of the child. *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979). Thus, in certain circumstances, the state may terminate the parental rights of natural parents when it is in the best interest of the child. *In re E.G.*, 10th Dist. No. 07AP-26, 2007-Ohio-3658, ¶ 8, citing *In re Harmon*, 4th Dist. No. 00 CA 2694 (Sept. 25, 2000); *In re Wise*, 96 Ohio App.3d 619, 624 (9th Dist.1994).

{¶ 11} "A decision to award permanent custody requires the trial court to take a two-step approach." *K.L.* at ¶ 18. First, a trial court must determine if any of the factors set forth in R.C. 2151.414(B)(1) apply. *Id.* R.C. 2151.414(B)(1) provides, in relevant part:

> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in *division (D)(1) of section 2151.413 of the Revised Code,* the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary

custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in *division (D)(1) of section 2151.413 of the Revised Code,* the child was previously in the temporary custody of an equivalent agency in another state.

(Emphasis added.)

{¶ 12} Here, the trial court, pursuant to R.C. 2151.414(B)(1)(d), via the fully approved and adopted magistrate's decision, found "by clear and convincing evidence that [H.D.] has been in the temporary custody of [FCCS] for twelve or more months of a consecutive twenty-two month period." (June 11, 2013 Magistrate's Decision, 5.) The magistrate's decision also found, in the alternative, that the record satisfied R.C. 2151.414(B)(1)(a) and (b).

{¶ 13} The trial court, upon review of the magistrate's decision, approved and adopted the entirety of the decision but, with respect to the threshold determinations, only specifically addressed the magistrate's alternative R.C. 2151.414(B)(1)(a) finding. We have previously held that a trial court does not err in applying both R.C. 2151.414(B)(1)(a) and (d). *In re T.W.*, 10th Dist. No. 10AP-897, 2011-Ohio-903, ¶ 52; *In re P.S.*, 10th Dist. No. 08AP-1023, 2009-Ohio-1545, ¶ 7. Nonetheless, "[t]he plain language of R.C. 2151.414(B)(1)(a) reveals that the subsection is only triggered when none of the remaining three subsections are triggered. * * * Because the facts trigger subsection (d), they cannot and do not trigger subsection (a)." *In re Damron*, 10th Dist. No. 03AP-419, 2003-Ohio-5810, ¶ 9. Thus, pursuant to R.C. 2151.414(B)(1)(d), we must determine whether the trial court properly found the existence of the "12 of 22" factor.

{¶ 14} In the present case, father does not dispute that H.D. has been in the custody of FCCS for the requisite R.C. 2151.414(B)(1)(d) time period. According to the testimony of father, the GAL, and FCCS caseworker Solena Helm, H.D. has remained in the temporary custody of FCCS since his birth, or for 14 of the last 22 months at the time FCCS filed a motion with the trial court for permanent custody, and H.D. remains in the temporary custody of FCCS to date. Thus, the trial court properly determined by clear and convincing evidence that H.D. has been in the custody of FCCS for the requisite period of time under R.C. 2151.414(B)(1)(d).

{¶ 15} Therefore, although father specifically challenges the trial court's decision with respect to R.C. 2151.414(B)(1)(a), particularly the R.C. 2151.414(E) analysis, because we determine R.C. 2151.414(B)(1)(d) is applicable, we need not consider the trial court's findings and father's arguments with respect to R.C. 2151.414(B)(1)(a) and 2151.414(E).

{¶ 16} Because the R.C. 2151.414(B)(1) threshold has been met, we next turn to the best interests of H.D. "Once the trial court made its threshold findings, it is required to determine whether a grant of permanent custody to FCCS is in the best interest of the child." *K.L.* at ¶ 20. "The burden of proof falls upon FCCS to prove by clear and convincing evidence that an award of permanent custody is in the child's best interest." *Id.*

{¶ 17} With respect to the determination of a child's best interests, the trial court must consider all relevant factors, including, but not limited to, the following:

> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1); *id.* at ¶ 21.

{¶ 18} In granting permanent custody to FCCS, the trial court found each of the above factors weighed in favor of finding permanent custody to be in H.D.'s best interest. Father asserts the trial court's determination, with respect to R.C. 2151.414(D)(1)(a), is not supported by clear and convincing evidence. Father does not challenge the trial court's findings, pursuant to R.C. 2151.414(D)(1)(b), (c), (d) or (e), and, upon review of the record, we find the trial court's conclusions, with respect to those factors, are supported by clear and convincing evidence. Thus, we confine our best interest discussion to father's challenge regarding R.C. 2151.414(D)(1)(a).

{¶ 19} Pursuant to R.C. 2151.414(D)(1)(a), the trial court was required to consider H.D.'s relationships and interactions with his parents, relatives and foster parents. *Damron* at ¶ 12. The trial court found H.D.'s foster parents have raised him since birth and that H.D. "is thriving in his foster home and has an appropriate relationship with his foster parents, but * * * lacks a significant relationship with Father." (Aug. 9, 2013 Decision and Judgment Entry, 11-12.) Father argues mother's failings to visit and establish a bond with H.D. were imputed against him and that he "was only temporarily removed from the process and reengaged with visits as soon as he was released from jail." (Appellant's Brief, 25.) According to father, "[a]t the time of the hearing, the visits had been extended to two hours and were going well." (Appellant's Brief, 25.)

{¶ 20} Upon review, we find the trial court's finding, as to R.C. 2151.414(D)(1)(a), is supported by clear and convincing evidence. It is undisputed that father failed to visit with H.D. for a period of four to six months between August 2012 and February 2013 and that the foster parents have established a parental bond with H.D.

{¶ 21} Father testified that he missed visitation with H.D. for four months due to active warrants for his arrest and subsequent periods of incarceration for domestic violence and criminal mischief. Father acknowledged that he missed several visits prior to his incarceration because he was "running from the [l]aw." (Apr. 9, 2013 Tr., 56.) According to father, he was released from jail on January 25, 2013 and resumed visits with H.D. on February 2, 2013. Father testified that during visitation, H.D. "warms up to me after I'd say 10 or 15 minutes, maybe 20 minutes and then we start playing." (Apr. 9,

2013 Tr., 52.)  According to father, he loves H.D. and believes H.D. loves him and knows he is his father.

{¶ 22}  Solena Helm, FCCS caseworker, testified that father did not visit with H.D. between August 1, 2012 and February 5, 2013, approximately five and one-half months. According to Helm, based upon her observations of father and H.D., "they do not have a parent/child bond."  (Apr. 8, 2013 Tr., 99.)  Helm testified that H.D. does not know "that [father] is his dad and that there's this, you know, there's no like separation anxiety," and it takes H.D. awhile to get comfortable with father.  (Apr. 8, 2013 Tr., 99-100.)  Helm acknowledged that the lack of a paternal bond was the result, in part, of father's extended absence.  Helm also stated that H.D. has been with his foster and prospective adoptive parents since August 2011 and is bonded to the family.  According to Helm, upon seeing his foster mother, H.D. "was just excited; like reaching for her, you know, couldn't wait to be picked up."  (Apr. 8, 2013 Tr., 101.)

{¶ 23}  When specifically asked whether H.D. has bonded to his foster family, the GAL responded "that is an easy answer, it's a definite yes. * * * He interacts with * * * the foster mom as if she is mom."  (Apr. 9, 2013 Tr., 8.)  According to the GAL, father and H.D.'s bonding has not progressed because father was absent from H.D's life for a period of four to six months.  According to the GAL, the court should "grant the P.C.C. motion * * * to move forward with placement."  (Apr. 9, 2013 Tr., 10.)

{¶ 24}  Thus, despite father's claim that he is bonded with H.D. and that the mother's absence from H.D.'s life was imputed against him, the record established that father and H.D. did not possess a parent/child bond and that father was absent from H.D.'s life for a significant period of time.  As such, "the trial court was free to assign more weight to the overwhelming testimony" presented by FCCS.  *J.T.* at ¶ 15.

{¶ 25}  Accordingly, with all the R.C. 2151.414(D)(1) factors weighing in favor of granting permanent custody to FCCS, we find that FCCS established by clear and convincing evidence that H.D.'s best interest is served by placing him in the permanent custody of FCCS, which will facilitate the adoption of H.D. by his current foster parents. Thus, father's sole assignment of error is overruled.

## V. CONCLUSION

{¶ 26} Having overruled father's sole assignment of error, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is hereby affirmed.

*Judgment affirmed.*

DORRIAN and O'GRADY, JJ., concur.

_____