[Cite as *In re L.W.*, 2018-Ohio-2099.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the matter of: | : | |
| [L.W. and Z.W., | : | No. 17AP-586 |
| | : | (C.P.C. No. 13JU-7851) |
| H.B., | : | |
| Appellant]. | : | (REGULAR CALENDAR) |
| | : | |
| In the matter of: | : | |
| | : | |
| [J.J., | : | No. 17AP-587 |
| | : | (C.P.C. No. 13JU-7853) |
| H.B., | : | |
| | : | (REGULAR CALENDAR) |
| Appellant]. | : | |

D E C I S I O N

Rendered on May 31, 2018

**On brief:** *Robert J. McClaren*, for appellee Franklin County Children Services.

**On brief:** *Yeura R. Venters*, Public Defender, and *George M. Schumann*, for appellant.

APPEALS from the Franklin County Court of Common Pleas,
Division of Domestic Relations, Juvenile Branch

DORRIAN, J.

{¶ 1} Appellant, H.B., appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, granting permanent custody of her minor children, J.J., L.W., and Z.W., to appellee, Franklin County Children Services ("FCCS"). Because we conclude the juvenile court's decision was supported by

competent, credible evidence, the court did not commit plain error by failing to appoint separate counsel for one of the children, and appellant was not denied effective assistance of counsel, we affirm.

## I. Facts and Procedural History

{¶ 2} Appellant is the mother of seven children. The proceedings giving rise to the present appeal involve custody of J.J., L.W., and Z.W. On May 31, 2013, FCCS filed a complaint in case No. 13JU-7851 alleging L.W. and Z.W. were neglected and dependent children and seeking protective supervision of them. The same day, FCCS filed a complaint in case No. 13JU-7853 alleging J.J. was a neglected and dependent child and seeking protective supervision of him.[1] On July 15, 2013, a magistrate of the juvenile court found J.J., L.W., and Z.W. to be neglected and dependent minor children and ordered protective supervision by FCCS. An initial case plan was filed on July 18, 2013.

{¶ 3} On January 12, 2015, FCCS moved to terminate protective supervision and for a grant of temporary custody of J.J., L.W., and Z.W. That same day, the court entered ex parte orders granting temporary custody of J.J., L.W., and Z.W. to FCCS. An amended case plan was filed on February 22, 2016.

{¶ 4} On June 24, 2016, FCCS filed motions seeking permanent custody of J.J., L.W., and Z.W. The guardian ad litem for the children filed a report on April 17, 2017, recommending permanent custody of J.J., L.W., and Z.W. be granted to FCCS. The juvenile court conducted a hearing on the motions for permanent custody over five days beginning April 24, 2017. At the hearing, FCCS presented testimony from the children's foster father, a supervisor from the agency involved with the children's foster placement, two FCCS caseworkers, Z.W.'s counselor/therapist, J.J. and L.W.'s counselor/therapist, the guardian ad litem, and from Dr. Rhonda Lilley, a psychologist who performed evaluations on appellant and four of her children (H.T., J.J., L.W., and Z.W.). Appellant also testified as a witness at the hearing. Following completion of the hearing, on July 21, 2017, the juvenile court issued a judgment granting permanent custody of J.J., L.W., and Z.W. to FCCS.

---

[1] The juvenile court's decision indicates that additional complaints were filed the same day regarding three other children of appellant, S.B., H.T., and A.B. The resolution of those complaints is not at issue in the present appeal

## II. Assignments of Error

{¶ 5}   Appellant appeals and assigns the following five assignments of error for our review:

> [I.] The trial court committed prejudicial error by failing to consider all 5 best interest factors as required by R.C. 2151.414(D)(1)(a) through (e).

> [II.] The juvenile court's judgment granting permanent court commitment of the minor children to Franklin County Children Services was against the manifest weight of the evidence.

> [III.] The trial court committed plain error by failing to appoint separate counsel for the child whose wishes were in conflict with the recommendation of the guardian ad litem, and were also in conflict with the position of the attorney appointed to represent her.

> [IV.] Appellant was prejudicially deprived of her United States and Ohio [C]onstitutional rights to a fair trial due to the ineffective assistance of counsel.

> [V.] The juvenile court's termination of the appellant's parental rights was fundamentally unfair in violation of the United States and Ohio Constitutions.

## III. Discussion

### A. Standard of Review in Permanent Custody Cases

{¶ 6}   The right to parent one's child is a fundamental right protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 16, of the Ohio Constitution. *In re A.J.*, 10th Dist. No. 14AP-284, 2014-Ohio-5046, ¶ 18, citing *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, ¶ 28, and *In re Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶ 16.  However, the state possesses broad authority to intervene to protect children from abuse and neglect and may seek an award of permanent custody of a child, which terminates parental rights. *See C.F.* at ¶ 28, citing R.C. 2151.01. "Because an award of permanent custody is the most dramatic disposition available under the law, it is an alternative of last resort and is only justified when it is necessary for the welfare of the children." *In re* [*E.S.*], 10th Dist. No. 02AP-1408, 2003-Ohio-5446, ¶ 26 ("*E.S.*"), citing *In re Cunningham*, 59 Ohio St.2d 100, 105 (1979).

{¶ 7}   Under R.C. 2151.414(B)(1), a court may grant permanent custody of a child to an agency if it determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency and one of five specific conditions set forth in the statute applies to the child.  "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶ 8}   On appeal, we will not reverse a court's determination of a permanent custody motion unless it is against the manifest weight of the evidence.  *In re M.E.V.*, 10th Dist. No. 08AP-1097, 2009-Ohio-2408, ¶ 10.  "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."  *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279 (1978), syllabus.  In conducting our review, every reasonable presumption must be made in favor of the trial court's findings of fact and judgment.  *In re* [*H.B.*], 10th Dist. No. 04AP-164, 2004-Ohio-3887, ¶ 59, citing *Karches v. Cincinnati*, 38 Ohio St.3d 12, 19 (1988).  "[I]f the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment."  *Karches* at 19.  Moreover, " '[t]he discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned.' "  *In re* [*A.H.*], 10th Dist. No. 99AP-944 (June 27, 2000), quoting *In re Awkal*, 95 Ohio App.3d 309, 316 (8th Dist.1994).

## B. Challenge to the Merits of the Juvenile Court's Judgment

{¶ 9}   Appellant's first, second, and fifth assignments of error are interrelated because they challenge the merits of the judgment granting permanent custody to FCCS. In her second assignment of error, appellant claims the juvenile court's grant of permanent custody of the children to FCCS was against the manifest weight of the evidence.  Appellant reiterates many of the same arguments in support of her fifth assignment of error, in which

she asserts the grant of permanent custody of the children violated her right to due process. In her first assignment of error, appellant argues the juvenile court erred by failing to consider all the statutory factors in determining that an award of permanent custody to FCCS was in the best interest of the children.

**1. Manifest weight of the evidence and due process**

{¶ 10} We begin with appellant's second and fifth assignments of error in which she asserts the grant of permanent custody of J.J., L.W., and Z.W. to FCCS was against the manifest weight of the evidence and violated her right to due process.

{¶ 11} As relevant to the present appeal, the juvenile court may grant permanent custody of a child to a children services agency based on certain circumstances:

> Except as provided [by R.C. 2151.414(B)(2)], the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to [R.C. 2151.414(A)], by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in [R.C. 2151.413(D)], the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> * * *
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in [R.C. 2151.413(D)(1)], the child was previously in the temporary custody of an equivalent agency in another state.

\* \* \*

> For the purposes of [R.C. 2151.414(B)(1)], a child shall be considered to have entered the temporary custody of an agency on the earlier of the date the child is adjudicated pursuant to [R.C. 2151.28] or the date that is sixty days after the removal of the child from home.

R.C. 2151.414(B)(1).

{¶ 12} In determining whether a child cannot be placed with a parent within a reasonable time or should not be placed with a parent, pursuant to R.C. 2151.414(B)(1)(a), the juvenile court must consider all relevant evidence and determine whether one or more of the factors set forth in R.C. 2151.414(E) exist.  The juvenile court found in this case that the factors contained in R.C. 2151.414(E)(1), (2), and (4) applied to appellant.  Therefore, the court concluded, pursuant to R.C. 2151.414(B)(1)(a), the children could not be placed with appellant within a reasonable time and should not be placed with appellant.  Alternatively, the court found the children had been in the continuous custody of FCCS from January 12, 2015 to June 24, 2016, when the motions for permanent custody were filed, therefore satisfying the standard for permanent custody pursuant to R.C. 2151.414(B)(1)(d).  On appeal, appellant only challenges the juvenile court's conclusion, pursuant to R.C. 2151.414(B)(1)(a), that the children could not be placed with her within a reasonable time or should not be placed with her.  She does not challenge the court's conclusion that the children had been in the custody of FCCS for 12 or more months.

{¶ 13} This court has previously acknowledged that R.C. 2151.414(B)(1)(a) only applies when R.C. 2151.414(B)(1)(b) through (d) do not apply.  *In re H.D.*, 10th Dist. No. 13AP-707, 2014-Ohio-228, ¶ 13.  Despite this, however, a trial court does not err by applying both R.C. 2151.414(B)(1)(a) and (d) as alternative bases for a grant of permanent custody. *Id. See also In re N.W.*, 10th Dist. No. 07AP-590, 2008-Ohio-297, ¶ 9 ("Even though R.C. 2151.414(B)(1) requires the existence of only one of the circumstances in R.C. 2151.414(B)(1), a trial court may cite more than one factor in the alternative.").  Because appellant does not challenge the juvenile court's finding, pursuant to R.C. 2151.414(B)(1)(d), that the children had been in the custody of FCCS for 12 or more months of a consecutive 22-month period, we need not consider her challenge to the court's findings pursuant to R.C. 2151.414(B)(1)(a).  *In re T.W.*, 10th Dist. No. 10AP-897, 2011-

Ohio-903, ¶ 52 ("[W]hen R.C. 2151.414(B)(1)(d) has been satisfied, it is unnecessary for the trial court to analyze when a child could or should be placed with either parent and we need not consider such extraneous findings as to R.C. 2151.414(B)(1)(a)."). *See also In re D.G.,* 10th Dist. No. 08AP-667 (Mar. 5, 2009) ("[B]ecause R.C. 2151.414(B)(1)(d) was satisfied, the trial court was not required to address R.C. 2151.414(B)(1)(a), however, any error in doing so was not prejudicial."). Therefore, our review is limited to whether the juvenile court's conclusion that granting permanent custody to FCCS was in the best interest of the children was supported by the manifest weight of the evidence.

{¶ 14} The factors to be considered by the court in assessing whether a grant of permanent custody is in a child's best interest are set forth in statute:

> In determining the best interest of a child at a hearing held pursuant to division (A) of this section * * * the court shall consider all relevant factors, including, but not limited to, the following:
>
> (a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
>
> (b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
>
> (c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in [R.C. 2151.413 (D)(1)], the child was previously in the temporary custody of an equivalent agency in another state;
>
> (d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
>
> (e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

R.C. 2151.414(D)(1). The juvenile court judgment in this case addressed the factors contained in R.C. 2151.414(D)(1)(a) through (d) and concluded that granting permanent custody of the children to FCCS was in the best interest of the children.

**a. Interaction and interrelationships of the children with appellant and others**

{¶ 15} The juvenile court began its best interest analysis by considering the interaction and interrelationship of the children with appellant and others. The court cited testimony from Dr. Lilley that J.J. was minimally bonded with appellant and expressed little desire to have contact with her, and he was strongly bonded to his foster family. The court also cited Dr. Lilley's testimony that L.W. had an affectionate bond with appellant but was extremely fearful of the care she would receive from appellant and did not trust appellant to take care of her. The court referred to testimony from Dr. Lilley indicating that Z.W. was bonded with appellant, but had limited understanding of appellant's ability to provide for her needs due to her cognitive and developmental issues. The court noted J.J. and L.W. did not attend some visits with appellant, and that FCCS encouraged the children to attend the visits, but did not force them to attend. The court concluded that forcing the children to attend would have been detrimental and would have further damaged any bond between the children and appellant.

{¶ 16} Appellant argues on appeal the evidence demonstrated she loved her children and showed a longing to care for them, and that the children had a bond with appellant and with their siblings. Appellant admits her relationship with J.J. and L.W. became strained after they were removed from her custody, but argues the juvenile court wrongly blamed her for these strained relationships. Appellant argues FCCS hindered her attempts at reunification with the children by placing them in a foster home that was a substantial distance from where appellant lived, by permitting J.J. and L.W. to opt out of participating in visits with appellant, and by failing to implement family counseling. Appellant asserts she has a strong bond with Z.W. and the testimony of Dr. Lilley and the guardian ad litem indicated there was a bond between appellant and Z.W. Appellant claims the court ignored testimony from Dr. Lilley that Z.W. would be negatively impacted if her relationship with appellant was severed.

{¶ 17} Dr. Lilley testified she met with appellant individually, the children individually, and observed appellant interacting with the children on one occasion. She

testified the children did not trust appellant and appellant minimized her role in creating or exacerbating the children's problems. Dr. Lilley found that J.J. had a marginal attachment with appellant and expressed limited interest in spending time with her; she further found J.J.'s statements suggested repressed anger toward appellant. Dr. Lilley stated there was a minimal foundation to the parent-child relationship between J.J. and appellant and predicted J.J. would be emotionally distressed if returned to appellant's custody. Dr. Lilley also testified L.W. had a significant amount of emotional distress when they discussed reunification with appellant. L.W. told Dr. Lilley she feared returning to her mother's custody because of the lack of care provided by her mother in the past. Based on her interview, Dr. Lilley testified there was an attachment between L.W. and appellant but due to the lack of trust, reunification with appellant could lead to significant anxiety for L.W. Dr. Lilley further testified Z.W. was bonded with appellant and was the most active in seeking appellant's attention. She also testified Z.W. would experience a negative impact if her relationship with appellant was severed. Similarly, the guardian ad litem testified J.J. had a strained relationship with appellant and L.W.'s relationship with appellant was becoming strained, but Z.W. wanted to have a relationship with appellant.

**b. The wishes of the children**

{¶ 18} The juvenile court next considered the wishes of the children, finding, based on the guardian ad litem's report and the court's in-camera interviews, J.J. and L.W. did not wish to be reunited with appellant. The court found Z.W. expressed a desire to be reunited with appellant, but noted Z.W. was six years old and had a significant delay in her cognitive and intellectual abilities. The court further noted the guardian ad litem recommended that FCCS be granted permanent custody of all three children.

{¶ 19} Appellant acknowledges that J.J. and L.W. indicated they did not wish to live with her, but argues the juvenile court improperly disregarded Z.W.'s expressed wish to be with appellant. She asserts that neither Dr. Lilley nor the guardian ad litem testified that Z.W. lacked the maturity to express her own wishes. Appellant also cites the court's in-camera interview with Z.W., in which she stated multiple times that she wanted to be with appellant. Appellant further argues the juvenile court improperly referred to the wishes of some of appellant's other children, which she claims were not relevant to determining the wishes of J.J., L.W., and Z.W.

{¶ 20} During the in-camera interviews conducted by the court, J.J. and L.W. stated they wanted to be adopted and did not want to return to appellant's custody. The guardian ad litem also testified J.J. and L.W. indicated they did not wish to be returned to appellant's custody. Z.W. told the juvenile court that she wanted to be with appellant and did not want to be with the foster family. The guardian ad litem also testified regarding Z.W.'s ability to express her wishes:

Q. And then [Z.W.], how old is she?

A. She is six.

Q. And you've already indicated that she has some developmental disability?

A. Yes.

Q. So do you believe she functions at a six-year-old level?

A. No.

Q. And do you believe she has the capability of understanding what's before the Court today?

A. No.

Q. Has she been able to express a wish?

A. Yes.

Q. And what has she expressed?

A. She -- she'll say something like mommy.

(July 17, 2017 Tr. at 99.) As noted, Dr. Lilley also testified that Z.W. had mild intellectual disability, and verbal processing and expression delays. The transcript of the court's in-camera interview with Z.W. is consistent with the observations of the guardian ad litem and Dr. Lilley, suggesting that Z.W. had difficulty focusing during the brief interview conducted by the court.

**c. Custodial history of the children**

{¶ 21} In evaluating the custodial history of the children, the juvenile court found they had all been in the custody of FCCS and in the same foster home for more than 27

months by the time of the final order. Appellant argues the juvenile court improperly relied on the prior custodial history of her other children and did not consider the fact that J.J., L.W., and Z.W. had each lived more than half of their lives in her care prior to the grant of temporary custody to FCCS in January 2015. Although the court referred to appellant's other children in its recitation of the facts and history of the case, it did not refer to them in its analysis of R.C. 2151.414(D)(1)(c). The record demonstrates that FCCS's request for temporary custody of J.J., L.W., and Z.W. was granted to FCCS on January 12, 2015, and the children remained in the custody of FCCS thereafter. The juvenile court issued its final order granting permanent custody to FCCS on July 21, 2017.

### d. Need for a legally secure placement and whether that can be achieved without a grant of permanent custody

{¶ 22} The juvenile court found the three children had significant special needs. The court further found the foster parents were interested in adopting the children and that no relative or other person sought custody of the children, thereby establishing that a legally secure placement could not be achieved without a grant of custody to FCCS.

{¶ 23} Appellant concedes each of the children had medical needs and other special needs, but argues she acknowledged she had previously failed to meet some of the children's needs in the past but was prepared to meet them in the future. Appellant claims she had identified medical providers for the children and had found parenting services that would support her in the home if the children were returned. Appellant admits she had lost her housing at the time of the final hearing, but asserts she was temporarily staying with a friend and had a plan to obtain independent housing in the near future. Appellant generally asserts the juvenile court disregarded evidence demonstrating she complied or attempted to comply with the case plan.

{¶ 24} Dr. Lilley testified about each of the children's psychological needs and also referred to some of their educational needs. She diagnosed J.J. as having adjustment disorder with mixed disturbance of emotions and conduct. She further noted he had previously been diagnosed as having attention deficit and hyperactivity disorder and a learning disability with respect to reading. Dr. Lilley likewise diagnosed L.W. as having adjustment disorder with mixed disturbance of emotions and conduct, and noted that L.W. also had previously been diagnosed as having attention deficit and hyperactivity disorder.

Dr. Lilley testified that Z.W. had a mild intellectual disability and an IQ score of 60. She explained this meant Z.W. had both cognitive delays and verbal processing and expressive deficits. The guardian ad litem testified that based on his observation and knowledge of the case, he did not believe appellant had the ability to meet the needs of the children.

{¶ 25} With respect to compliance with the case plan, one of the FCCS caseworkers testified appellant had recently lost her housing and needed to acquire secure housing. She further testified there were other elements of the case plan that appellant needed to satisfy, including individual and family counseling, as well as consistently attending the children's medical appointments. During the hearing, appellant testified she intended to comply with the remaining case plan objectives.

### e. Conclusion regarding appellant's manifest weight and due process challenges

{¶ 26} Based on our review of the evidence and testimony introduced at the hearing before the juvenile court, we find there was competent, credible evidence to support the court's conclusion that granting permanent custody to FCCS was in the children's best interest. Thus, we cannot conclude the juvenile court's determination was against the manifest weight of the evidence. As noted above, appellant does not challenge the juvenile court's conclusion, pursuant to R.C. 2151.414(B)(1)(d), that the children had been in the custody of FCCS for 12 or more months of a consecutive 22-month period. We also conclude the court's grant of permanent custody to FCCS did not violate appellant's due process rights.

{¶ 27} Accordingly, we overrule appellant's second and fifth assignments of error.

### 2. Challenge to the Juvenile Court's Best Interest Analysis.

{¶ 28} Next, we turn to appellant's first assignment of error in which she argues the juvenile court erred by failing to consider all the factors set forth under the law to determine whether an award of permanent custody to FCCS was in the best interest of the children because it did not consider whether any of the factors under division R.C. 2151.414(E)(7) to (11) applied.

{¶ 29} R.C. 2151.414(D)(1)(e) incorporates by reference into the best interest analysis the factors set forth in R.C. 2151.414(E)(7) to (11). Those factors relate to whether a parent has been convicted of or pleaded guilty to certain criminal offenses, has repeatedly

withheld medical treatment or food from the child when the parent has the means to provide it, has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times, has abandoned the child, or has had parental rights involuntarily terminated with respect to a sibling of the child.

{¶ 30} Appellant claims the juvenile court recited R.C. 2151.414(D)(1)(e) in its decision, but failed to actually consider whether any of the factors contained in R.C. 2151.414(E)(7) to (11) existed in determining whether a grant of permanent custody to FCCS was in the best interest of the children. Appellant argues none of the factors applied to her, which she asserts weighed against granting permanent custody of the children to FCCS, and the juvenile court erred by failing to consider this part of the best interest test. FCCS asserts the juvenile court did not err because none of the factors applied to appellant and, accordingly, there were no findings to be made on those factors. Alternatively, FCCS claims appellant could have been found to have failed to provide proper medical treatment to the children, pursuant to R.C. 2151.414(E)(8), but that appellant was not prejudiced by the juvenile court's failure to consider this factor because it would have provided further support for an award of permanent custody to FCCS.

{¶ 31} The list of factors set forth in R.C. 2151.414(D)(1) is non-exclusive and the juvenile court must consider all relevant factors in determining whether an award of permanent custody is in a child's best interest. *In re B.C.*, 141 Ohio St.3d 55, 2014-Ohio-4558, ¶ 26; *In re M.W.*, 10th Dist. No. 11AP-524, 2011-Ohio-6392, ¶ 37. "A trial court is not required to specifically enumerate each factor under R.C. 2151.414(D) in its decision." *In re C.C.*, 10th Dist. No. 04AP-883, 2005-Ohio-5163, ¶ 53. "However, there must be some indication on the record that all of the necessary factors were considered." *Id.*

{¶ 32} Due to the nature of the factors set forth in R.C. 2151.414(E)(7) to (11), they will not apply in every case. This court has previously affirmed decisions holding an award of permanent custody to an agency to be in a child's best interest without explicit consideration of those factors where they did not apply, or decisions where the juvenile court only considered certain of the R.C. 2151.414(E)(7) to (11) factors that were applicable to the particular case . *See In re J.A.G.*, 10th Dist. No. 08AP-823, 2009-Ohio-821, ¶ 16, fn.1 ("The trial court did not consider the fifth R.C. 2151.414(D) factor as the factors [found] in R.C. 2151.414(E)(7) to (11) do not apply to J.R.G. and her children."); *In re J.S.*, 10th Dist.

No. 05AP-615, 2006-Ohio-702, ¶ 32 (juvenile court magistrate found that only R.C. 2151.414(E)(10) factor applied to the case and juvenile court did not err by considering that factor); *In re M.R.D.*, 10th Dist. No. 05AP-324, 2005-Ohio-5705, ¶ 30 (holding that most of the factors contained in R.C. 2151.414(E)(7) to (11) did not apply under the facts of the case and there was some evidence that some of the parent's children had been involuntarily removed from her care).

{¶ 33} The juvenile court recited the statutory best interest factors in its decision in the present case. Moreover, as noted above, the juvenile court reached alternate findings as to why granting permanent custody to FCCS was necessary. Pursuant to R.C. 2151.414(B)(1)(d), the court found the children had been in the continuous custody of FCCS for 12 or more months in a 22-month period. The court also found, pursuant to R.C. 2151.414(B)(1)(a), the children could not be placed with either parent within a reasonable time. In reaching the latter conclusion, the court was required to determine whether one or more of the factors set forth in R.C. 2151.414(E) existed as to each of the parents. The court found that the factors contained in R.C. 2151.414(E)(1), (2), and (4) applied to appellant.[2] Based on this analysis, it appears the juvenile court implicitly found that the factors contained in R.C. 2151.414(E)(7) to (11) did not apply to appellant because it did not include such factors in its finding that the children could not be placed with either parent within a reasonable time pursuant to R.C. 2151.414(B)(1)(a). Although the juvenile court did not explicitly set forth a conclusion that these factors did not apply in its analysis of the best interest of the children, we cannot conclude the juvenile court erred by failing to consider the R.C. 2151.414(E)(7) to (11) factors, as incorporated in R.C. 2151.414(D)(1)(e), in its determination of whether granting permanent custody to FCCS was in the best interest of the children because the decision clearly indicates the juvenile court considered all of the R.C. 2151.414(E) factors, including those in R.C. 2151.414(E)(7) to (11), in its analysis, pursuant to R.C. 2151.414(B)(1)(a), and found that those factors did not apply. Under these circumstances, the juvenile court did not err by failing to explicitly mention those factors in its best interest analysis. *See In re D.S.*, 10th Dist. No. 07AP-479, 2007-

---

[2] The juvenile court also found that the factors contained in R.C. 2151.414(E)(1) and (12) applied to the father of the children.

Ohio-6781, ¶ 13 ("It is not prejudicial for a court to fail to mention or consider factors that are irrelevant to the case at hand.").

{¶ 34} Accordingly, we overrule appellant's first assignment of error.

## C. Challenge to the Juvenile Court's Failure to Assign Separate Counsel for Z.W.

{¶ 35} Appellant argues in her third assignment of error that the juvenile court erred by failing to appoint separate counsel for Z.W. because she expressed a desire to be reunited with appellant, which was in conflict with the recommendation of the guardian ad litem and the position taken by the attorney representing the children.

{¶ 36} Appellant admits she did not raise this issue before the juvenile court and, therefore, has forfeited all but plain error. In a civil proceeding, "plain error involves those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material, adverse effect on the character of, and public confidence in, judicial proceedings." *In re Moore*, 10th Dist. No. 04AP-229, 2005-Ohio-747, ¶ 8, citing *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 122 (1997).

{¶ 37} This court has previously held that "should the wishes of the children, as expressed either directly by them or through the guardian ad litem, evidence a strong desire to be reunited with [a parent], and should the guardian ad litem's position regarding the best interest of the children conflict with those wishes, the trial court should appoint separate counsel to represent the children." *E.S.* at ¶ 44. *See also In re Williams*, 101 Ohio St.3d 398, 2004-Ohio-1500, ¶ 29 ("[P]ursuant to R.C. 2151.352, as clarified by Juv.R. 4(A) and Juv.R. 2(Y), a child who is the subject of a juvenile court proceeding to terminate parental rights is a party to that proceeding and, therefore, is entitled to independent counsel in certain circumstances."). The *E.S.* court cited a procedure adopted by the Eleventh District Court of Appeals providing that " 'when a child consistently expresses a desire to be with a parent, then a juvenile court should investigate, giving due regard to the child's maturity and understanding of the proceedings, and make a ruling about whether an attorney should be appointed to represent the child's interests and expressed wishes.' " *Id.* at ¶ 47, quoting *In re Williams*, 11th Dist. No. 2002-G-2454, 2002-Ohio-6588, ¶ 26. The *E.S.* court directed the juvenile court to follow that procedure on remand:

> On remand, this procedure should be utilized if the children express a strong desire to be reunified with [their parent]. If the children express such a desire and this desire is contrary to the guardian ad litem's position, the court should inquire further to determine whether an actual conflict exists between the children's desire and the guardian ad litem's position. In determining whether an actual conflict exists, the court should give due regard to the children's maturity and ability to understand the proceedings. If, after considering those factors, the court determines that an actual conflict exists, the court should appoint counsel to represent the children.

*Id.* at ¶ 48.

{¶ 38} Shortly after the complaints were filed in May 2013, Andrew Russ was appointed as guardian ad litem and attorney for the children. At a hearing on April 6, 2015, Russ reported to the court he had a conflict of interest because he recommended custody be granted to FCCS but, at the time, the children wanted to return to appellant. As a result, the juvenile court appointed a new guardian ad litem, and Russ remained the attorney for the children. Later, at a hearing on February 3, 2017, Russ indicated to the court that he might have a conflict in serving as the attorney for all of the children because J.J. and L.W. did not want to be returned to appellant's custody but other children did. A discussion ensued regarding the *E.S.* decision and whether an actual conflict existed. During that discussion, Russ indicated his opinion that there was no conflict with him continuing to represent Z.W. because of her youth, suggesting she was not able to adequately express her preference. The juvenile court ultimately did not modify the appointment and Russ continued to represent all the children. As discussed above, in determining the wishes of the children, pursuant to R.C. 2151.414(D)(1)(b), the juvenile court concluded Z.W. had a significant delay in her cognitive and intellectual abilities, suggesting the court considered her to be unable to understand the proceedings and clearly express her wishes. We have found there was competent, credible evidence to support the juvenile court's conclusion regarding Z.W.'s capacity to express her wishes.

{¶ 39} *E.S.* holds that when a potential conflict arises, the juvenile court should determine whether an actual conflict exists—in this case, an actual conflict between the wishes of the different children with respect to reunification, such that one attorney could not effectively represent all the children. In making such a determination, the court must

give due regard to a child's maturity and ability to understand the proceedings. *E.S.* at ¶ 48. Thus, when confronted with Russ's statement during the February 2017 hearing about a potential conflict in representing all the children, the best practice would have been for the juvenile court to undertake a thorough inquiry into whether an actual conflict existed. With respect to Z.W., Russ himself suggested she was incapable of clearly expressing her wishes due to her age and corresponding lack of maturity. In light of this statement and the juvenile court's subsequent findings with respect to Z.W.'s cognitive and intellectual abilities, we cannot conclude the juvenile court's failure to appoint separate counsel to represent Z.W. constitutes plain error.

{¶ 40} Accordingly, we overrule appellant's third assignment of error.

### D. Ineffective Assistance of Counsel

{¶ 41} Finally, in her fourth assignment of error, appellant asserts her trial counsel provided ineffective assistance. We apply a two-part test to claims of ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-42 (1989). First, appellant must demonstrate that her counsel's performance was deficient. Second, she must show the deficient performance resulted in prejudice. *Strickland* at 687. "To show that a defendant has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." *Bradley* at paragraph three of the syllabus. "Judicial scrutiny of counsel's performance must be highly deferential. * * * A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland* at 689.

{¶ 42} Appellant first asserts her trial counsel was ineffective by failing to request separate counsel for Z.W. As noted above, although appellant's counsel did not raise this issue, the juvenile court considered it when Russ raised the possibility of a conflict of interest. Assuming for purposes of analysis that failing to argue in favor of separate counsel for Z.W. when Russ initially raised the issue or again at some later point constituted

deficient performance by appellant's trial counsel, appellant fails to demonstrate she was prejudiced by this failure. Because the juvenile court considered and rejected the possibility of separate counsel for Z.W., appellant cannot demonstrate a reasonable probability that the result would have been different if her counsel had sought separate counsel for Z.W. *See In re Graham*, 167 Ohio App.3d 284, 2006-Ohio-3170, ¶ 42 (1st Dist.) ("We have already determined that independent counsel for the children was not warranted, so [mother's] case was not prejudiced by her counsel's failure to request separate counsel for the children.").

{¶ 43} Appellant next claims her trial counsel was ineffective in failing to object to the juvenile court conducting in-camera interviews with three of her other children, D.T., H.T., and A.B. Similarly, appellant argues her counsel was ineffective by failing to object to the juvenile court's order for a psychological assessment of H.T. Appellant asserts Dr. Lilley testified about statements H.T. made, including expressing her desire not to live with appellant. Appellant argues the wishes of her other children with respect to custody are not relevant to the custody determination for J.J., L.W., and Z.W.

{¶ 44} Once again, assuming for purposes of analysis that appellant's trial counsel performed deficiently by failing to object to the in-camera interviews of her other children or to the psychological assessment of H.T., appellant fails to demonstrate a reasonable probability that the outcome would have been different if her counsel had objected. Although the juvenile court briefly referred to the fact that D.T., H.T., and A.B. did not want to be reunited with appellant in its discussion of the wishes of J.J., L.W., and Z.W., the decision does not indicate that the court relied on the wishes of the other children in finding that permanent custody was in the best interest of J.J., L.W., and Z.W. Similarly, while Dr. Lilley testified about her assessment of H.T. and referred to statements H.T. made, the final order indicates the court focused on the best interest of J.J., L.W., and Z.W. in determining whether to grant permanent custody to FCCS.

{¶ 45} Appellant also claims her trial counsel was ineffective by failing to object to certain testimony from Dr. Lilley that she asserts contained hearsay statements and by eliciting hearsay statements during his questioning of Dr. Lilley. Appellant does not cite to specific hearsay statements allegedly testified to by Dr. Lilley, but merely refers to certain pages of the transcript. Based on our review of the cited pages of the transcript, it appears

the bulk of the allegedly objectionable testimony related to information Dr. Lilley said she was given about the children's prior diagnoses or to statements made by appellant or the children themselves during Dr. Lilley's examination. The statements made by the children were likely admissible, pursuant to Evid.R. 803(4), providing an exception to the rule against hearsay for statements made for purposes of medical diagnosis or treatment. Thus, appellant has not established she was prejudiced by her trial counsel's failure to object to this testimony by demonstrating a reasonable probability that it would have been excluded if he had objected.

{¶ 46} Finally, appellant further argues her trial counsel was ineffective by failing to object to the admission of the psychological reports on the children, asserting they failed to meet the requirements for admissibility under Evid.R. 703. Appellant generally asserts Dr. Lilley based her recommendations on hearsay evidence and appears to imply the reports contained hearsay evidence. However, appellant fails to identify specific portions of the reports containing, or based on, hearsay evidence. Therefore, appellant has failed to demonstrate the reports were inadmissible and we cannot conclude her trial counsel rendered ineffective assistance by failing to object to their admission. *See State v. Toland*, 5th Dist. No. 2006-CA-0162, 2007-Ohio-644, ¶ 83 ("[A]ppellant does not specifically identify any statement contained in the report of the psychologist that he contends was prejudicial to him. * * * Because appellant fails to properly reference portions of the record supporting his claim that defense counsel's failure to object constitutes error, appellant cannot demonstrate these claimed instances of error.").

{¶ 47} Accordingly, we overrule appellant's fourth assignment of error.

**IV. Conclusion**

{¶ 48} For the foregoing reasons, we overrule appellant's five assignments of error and affirm the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.

*Judgment affirmed.*

TYACK and SADLER, JJ., concur.