[Cite as *In re H.L.R.*, 2021-Ohio-229.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

IN RE: H.L.R.

:
:
:    Appellate Case No. 28894
:
:    Trial Court Case No. 2018-2284
:
:    (Appeal from Common Pleas Court-
:    Juvenile Division)
:
:

. . . . . . . . . . .

O P I N I O N

Rendered on the 29th day of January, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by SARAH E. HUTNIK, Atty. Reg. No. 0095900, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
     Attorney for Appellee, Montgomery County Children Services

ROBERT ALAN BRENNER, Atty. Reg. No. 0067714, P.O. Box 340214, Beavercreek, Ohio 45434
     Attorney for Appellant, Mother

. . . . . . . . . . . .

TUCKER, P.J.

**{¶ 1}** Mother appeals from a judgment of the Montgomery County Court of Common Pleas, Juvenile Division, which terminated her parental rights and awarded Montgomery County Children Services ("MCCS") permanent custody of her child, H.L.R. Mother contends the juvenile court erred by finding that an award of permanent custody was in the child's best interest.

**{¶ 2}** Because a review of the record shows clear and convincing evidence that H.L.R. had been in the temporary custody of MCCS for 12 or more months out of a consecutive 22-month period and that an award of permanent custody to MCCS was in her best interest, we affirm.

## I.     Facts and Procedural Background

**{¶ 3}** H.L.R. was born in May 2011. She was born with hydrocephalus, a condition in which excess fluid accumulates in the brain.  As a result, H.L.R. has a shunt, or drainage tube, which permits drainage of excess fluids from her brain to other areas of the body where the fluid can be absorbed.

**{¶ 4}** In early 2018, MCCS learned that H.L.R. was missing an excessive amount of school.   In April 2018, MCCS scheduled a family conference in order to address the issue.  Mother failed to attend the meeting.[1]   In May 2018, MCCS filed a complaint alleging H.L.R. to be a neglected and dependent child.   Temporary custody was awarded to MCCS, and H.L.R. was placed in foster care.  A case plan was implemented; it required Mother to obtain employment and housing, attend visitations with H.L.R., engage in mental health treatment including anger management, and submit to drug screens as

---

[1] MCCS was unable to ascertain the identity of H.L.R.'s father.

requested.

{¶ 5} Once she was in foster care, it was determined H.L.R. had significant medical and dental problems that Mother had not addressed. Specifically, H.L.R. had been referred to a neurologist regarding recurrent headaches, but Mother had failed to take her to the appointment.[2] Mother also did not take H.L.R. to some of her regularly-scheduled yearly neurological examination appointments. Further, vision issues can arise as a result of hydrocephalus, yet Mother never took H.L.R. for a vision examination.

{¶ 6} It was also discovered that H.L.R. suffered from labial adhesions and eczema and environmental and food allergies. The record demonstrates Mother had taken H.L.R. to the emergency room at Children's Hospital on five different occasions for problems related to the allergies, but she failed to pursue suggested follow-up care. While in foster care, H.L.R. was prescribed an Epipen, an inhaler, and Singulair for her allergies and a steroid cream for her eczema. H.L.R. now sees a gynecologist regarding to the labial adhesions for which she was prescribed treatment.

{¶ 7} The foster family also discovered that H.L.R. had significant tooth decay; she underwent surgery for several tooth extractions and root canal procedures, and she got four crowns and four fillings. The record shows that Mother took H.L.R. to a dentist only one time, when she was approximately five years old.

{¶ 8} On June 12, 2019, the juvenile court granted a first extension of temporary custody. A magistrate held a permanent custody hearing in December 2019, after which the magistrate filed an order terminating Mother's parental rights and awarding permanent custody to MCCS. Mother filed objections, which were overruled, and the juvenile court

---

[2] The record indicates that headaches can indicate a problem with the brain shunt.

adopted the magistrate's order awarding permanent custody to MCCS.

{¶ 9} Mother appeals.

## II.     Analysis

{¶ 10} Mother asserts the following as her sole assignment of error:

THE JUVENILE COURT ERRED WHEN IT GRANTED PERMANENT CUSTODY OF THE CHILD TO [MCCS].

{¶ 11} Mother asserts that the evidence did not support the finding that awarding permanent custody to MCCS was in H.L.R.'s best interest.  Her argument focuses exclusively on her claim that she had met the goals of her case plan.

{¶ 12} A juvenile court's decision to terminate parental rights and grant permanent custody to an agency of the State must be supported by clear and convincing evidence. *In re L.C.*, 2d Dist. Clark No. 2010-CA-90, 2011-Ohio-2066, ¶ 14.   Clear and convincing evidence is evidence which will produce in the mind of the trier of fact "a firm belief or conviction as to the allegations sought to be established."   *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).   The evidence must be more than a preponderance, but it need not rise to the level of certainty that is required beyond a reasonable doubt in criminal cases.   *Id.*

{¶ 13} In reviewing a permanent custody decision, "we apply an abuse-of-discretion standard, and we will not disturb such a decision on evidentiary grounds 'if the record contains competent, credible evidence by which the court could have formed a firm belief or conviction that the essential statutory elements for a termination of parental rights have been established.' " *In the Matter of T.S.,* 2017-Ohio-482, 85 N.E.3d 225, ¶ 6

(2d Dist.), citing *In re L.C.* at ¶ 14. The phrase "abuse of discretion" implies a decision which is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 14} R.C. 2151.414(B)(1) establishes the following two-part test for courts to apply when determining a motion for permanent custody to a public children services agency:

> Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
>
> (a) The child is not abandoned or orphaned, has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period if, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.

(c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.

(d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state.

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 15} Here the juvenile court made the findings required to award MCCS permanent custody. Specifically, the court found that H.L.R. had been in the custody of MCCS for 12 or more months of a consecutive 22-month period and found that awarding permanent custody to MCCS was in the child's best interest.

{¶ 16} We note the juvenile court found that H.L.R. could not be placed with Mother within a reasonable time or should not be placed be placed with Mother. Because the court found by clear and convincing evidence that H.L.R. had been in the temporary custody of MCCS for 12 or more months of a consecutive 22-month period, the court improperly applied R.C. 2151.414(B)(1)(a); that section specifies that it is not applicable

in cases where the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for 12 or more months of a consecutive 22-month period. In other words, "[t]he plain language of R.C. 2151.414(B)(1)(a) reveals that the subsection is only triggered when none of the remaining three subsections are triggered." *In re H.D.*, 10th Dist. Franklin No. 13AP-707, 2014-Ohio-228, ¶ 13, quoting *In re Damron*, 10th Dist. Franklin No. 03AP-419, 2003-Ohio-5810, ¶ 9. Nevertheless, we find any error harmless because the court's decision reflected it had considered R.C. 2151.414(B)(1)(a) in the alternative while also making its finding under R.C. 2151.414(B)(1)(d).

{¶ 17} On appeal, Mother does not dispute the juvenile court's finding that R.H. had been in the temporary custody of MCCS for 12 or more months of a consecutive 22-month period. Instead, she argues that she had complied with her case plan, and therefore the juvenile court's decision regarding H.L.R.'s best interest was against the weight of the evidence.

{¶ 18} Upon review, we find Mother's argument to be unpersuasive. The record supported the conclusions that Mother failed to obtain housing and also failed to attend her mental health counseling; thus, she failed to complete at least two of the requirements set forth in her case plan. Further, even if we were to find that she had substantially satisfied her case plan objectives, such a finding would not be dispositive of the best-interest determination. *In re T.D.*, 2d Dist. Montgomery No. 27136, 2016-Ohio-7245, ¶ 12. This court has recognized that, "[w]hen the focus is on the child's best interest, a trial court conceivably could terminate parental rights even if a parent completed all of her case-plan objectives." (Citation omitted.) *Id.*

{¶ 19} Regarding H.L.R.'s interaction with significant others, the record demonstrated that she was bonded to Mother and that visits between the two generally went well. However, H.L.R. was also bonded to her foster family, which included one of her biological siblings. While H.L.R. had expressed a desire to live with Mother, she had also expressed that she was happy and comfortable with her foster family.

{¶ 20} Regarding H.L.R.'s custodial history and her need for a legally secure placement, we note that the child had been with her foster family since July 2018. Further, MCCS had been involved with the family since 2017, when H.L.R.'s younger sibling was discovered to be suffering from medical neglect. Mother failed to complete her case plan concerning the sibling, and her parental rights were ultimately terminated. Two other siblings lived with their paternal grandmother rather than with Mother.

{¶ 21} While Mother had completed parts of her case plan, she had failed to secure adequate housing. Further, she quit therapy and indicated she did not believe there was any reason to continue such therapy. The record also demonstrated an ongoing issue with Mother's anger, which had been directed to the foster parents and MCCS caseworkers.

{¶ 22} Further, Mother was unwavering in her insistence she had never neglected H.L.R. But the record unequivocally established she failed to attend to H.L.R.'s medical needs and that she allowed H.L.R. to miss an excessive amount of school.

{¶ 23} The record showed that the foster family had been attentive to H.L.R.'s needs. After she was placed in foster care, she began to regularly attend school but was significantly behind her peers. The foster parents worked with the teachers, and H.L.R. was placed on an I.E.P. and began to receive specialized services at school. She had

improved significantly since her foster placement. And, as previously stated, her medical needs were being met by the foster family. Finally, the foster family wished to adopt H.L.R.

{¶ 24} As noted, R.C. 2151.414(E)(11) also applied in this case, as Mother had had her parental rights terminated with regard to H.L.R.'s younger sibling and had failed to present evidence that, notwithstanding the termination, she was capable of providing a legally secure placement for H.L.R. Indeed, there was evidence that during visitations, Mother instructed H.L.R. not to comply with the treatment for her labial adhesions. Mother also continued to give the child chewing gum, despite being instructed not to do so in light of H.L.R.'s dental issues.

{¶ 25} On this record, the juvenile court did not err in terminating Mother's parental rights and awarding permanent custody to MCCS; there was clear and convincing evidence that H.L.R. had been in the temporary custody of MCCS for more than 12 months of a 22-month period and that an award of permanent custody was in the child's best interest.

{¶ 26} The sole assignment of error is overruled.

### III. Conclusion

{¶ 27} Mother's assignment of error being overruled, the judgment of the juvenile court is affirmed.

. . . . . . . . . . . . .

HALL, J. and WELBAUM, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Sarah E. Hutnik
Robert Alan Brenner
Sara Barry
Hon. Helen Wallace